Joseph **ANDERSON** and Mark **Haines**, Appellants–Defendants,

v.

**INDIANAPOLIS INDIANA AAMCO DEALERS ADVERTISING POOL**, Appellee–Plaintiff.

No. 48A02–9602–CV–105.

Court of Appeals of Indiana.

April 14, 1997.

Chris M. Teagle, Muncie, for Appellant Joseph Anderson.

Donald Dunnuck, Muncie, for Appellant Mark Haines.

James F. Beatty, Landman & Beatty, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellants-defendants Joseph Anderson and Mark Haines appeal a judgment in favor of appellee-plaintiff the Indianapolis, Indiana, AAMCO Dealer's Advertising Pool (Ad Pool) on its claim for breach of contract. Anderson and Haines contend that the trial court erred in entering judgment for the Ad Pool because the contract on which it sued violated the Indiana Deceptive Franchise Practices Act (Franchise Act). Further, Anderson and Haines argue that the contract was unenforceable because it was not signed by all of the parties, was induced by fraud and was not fully performed. Finally, Anderson and Haines contend that the trial court erred in finding against them on their counterclaim for conversion.

### FACTS

In 1986, Anderson and Haines, who owned a building which had previously housed an AAMCO Transmission franchise, expressed their interest in executing a formal franchise agreement with AAMCO, Inc. AAMCO responded that Anderson and Haines would have to sign a franchise agreement and an advertising agreement in order to procure a franchise. The advertising agreement provided that Anderson and Haines would participate in and cooperate with the Ad Pool, which consisted of four AAMCO, Inc. franchise owners in the Indianapolis area. The Ad Pool's responsibilities included providing Yellow–Page and media advertising in central Indiana. Although Anderson and Haines expressed dissatisfaction with the advertising agreement, they executed the franchise and advertising documents on April 18, 1986, and became owners of the Muncie AAMCO Transmission franchise.

Pursuant to the advertising agreement, Anderson and Haines began making payments to the Ad Pool. The advertising agreement provided in part as follows:

F. It is further agreed and understood by and between me and the Indianapolis IN AAMCO Dealer's Advertising Pool that I contract for a period equal to the duration of my Franchise Agreement with AAMCO ... to participate in and to be responsible for the payment of advertising on this local level as determined by my advertising pool.... The amount of payment for such advertising shall be as follows:

1. Existing percent or flat rate formula, if applicable $200.00/week

2. Existing minimum weekly contribution

3. Existing maximum weekly contribution

G. I acknowledge that the above amount(s) may be changed by the local AAMCO Dealer's Advertising Pool according to its standard procedure and I agree to be bound by any such change(s).

Record at 577–58. Initially, Anderson and Haines were assessed a monthly advertising fee of $200. Two months later, however, the Ad Pool increased each member's weekly contribution in order to provide for television advertising. As a result, Anderson and Haines' monthly obligation increased to $487.62. When Anderson and Haines failed to pay their contributions to the Ad Pool from June 1986 to February 1987, the Ad Pool filed suit against them for breach of contract. In response, Anderson and Haines filed a counterclaim alleging fraudulent misrepresentation and conversion. Anderson and Haines then made a few, small payments to the Ad Pool in 1987. Nevertheless, despite Anderson and Haines failure to pay, the Ad Pool continued to include the Muncie AAMCO franchise in its advertisements.

Thereafter, on January 29, 1990, the trial court notified the Ad Pool that its claim was subject to Ind.Trial Rule 41(E) dismissal for failure to prosecute. When the Ad Pool failed to appear at a subsequent hearing, the trial court dismissed the case. However, after the Ad Pool sought relief from the dismissal, its claim for breach of contract was reinstated.

Prior to trial, Anderson and Haines and the Ad Pool requested the trial court to rule on whether the Franchise Act was applicable as an affirmative defense to the breach of

contract claim. On December 13, 1994, the trial court entered an order finding that the Franchise Act was inapplicable. R. at 612–13. Specifically, the trial court found the following:

I.C. 23–2–2.7–2 purports to govern the relationship between franchisors and franchisees. First, the statute is not applicable to these parties since the plaintiff advertising pool is neither a franchisor or franchisee as defined by I.C. 23–2–2.5–1. [The foregoing observation does not address the question of whether or not the defendants might have had a cause of action against their franchisor if, as counsel suggests, the franchisor required the franchisee to participate in an advertising campaign prohibited by I.C. 23–2–2.7–1(11).]

Further, even if I.C. 23–2–2.7–1 was applicable to the plaintiff in this action, the statute of limitations has long expired for any action for damages or reformation.

R. at 612–13. Thereafter, Anderson and Haines filed a motion for leave to amend their counterclaim to allege the Ad Pool's violation of the Franchise Act. The trial court allowed the amendment, but subsequently dismissed the counterclaim. R. at 630.

Trial commenced on June 28, 1995. During trial, Anderson and Haines presented an offer of proof regarding the applicability and violations of the Franchise Act. Thereafter, the trial court entered judgment in favor of the Ad Pool on all counts.

### DISCUSSION AND DECISION

#### I. Standard of Review

Initially, we note that the trial court entered findings of fact and conclusions of law in support of its judgment at the Ad Pool's request. When the trial court enters special findings at the request of a party, we employ a deferential, two-tiered standard of review. *Landmark Motors, Inc. v. Chrysler Credit Corp.*, 662 N.E.2d 971, 975 (Ind.Ct. App.1996). We first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Id.* Special findings and the judgment flowing from those findings will be set aside only if they are clearly erroneous. *Id.*

In determining whether the findings and judgment are clearly erroneous, this court will neither reweigh the evidence nor judge the credibility of the witnesses; rather, we consider only the evidence in the record which supports the judgment along with the reasonable inferences to be drawn therefrom. *Id.* This court will not disturb the trial court's findings unless the record is devoid of facts or inferences to support them. *Id.*

#### II. Franchise Act

Anderson and Haines contend that the trial court erred in finding that the Franchise Act was inapplicable as a defense to the Ad Pool's breach of contract claim. The portion of the Franchise Act relevant to this appeal prohibits agreements between a franchisor and franchisee which require the franchisee to participate in advertising or promotional campaigns at an expense which is indeterminate, determined by a third party or determined by a formula, unless the agreement specifies the maximum sum the franchisee may be required to pay. IND.CODE § 23–2–2.7–1(11). According to Anderson and Haines, the advertising agreement violates this provision because it permits the Ad Pool to change the amount each member pays for advertising costs without setting a maximum amount. However, the trial court determined that because the Ad Pool was not a franchisor, the Franchise Act was inapplicable to the agreement.

IND.CODE § 23–2–2.5–1(b) and (c) defines a franchisee as a person to whom a franchise is granted and a franchisor as a person who grants a franchise. Here, Anderson and Haines are clearly franchisees. However, the Ad Pool is an association whose members are also franchisees. It is not a franchisor. Therefore, the advertising agreement is technically not subject to the Franchise Act.

Nevertheless, Anderson and Haines argue that because they were informed that they could not procure a franchise without signing the advertising agreement, the advertising agreement was in effect a part of the franchise agreement and, therefore, subject to the Franchise Act. In support of their argu-

ment, Anderson and Haines note the trial court's finding that:

as part of the Franchise Agreement, and as a condition precedent to obtaining the franchise, Anderson and Haines entered into an agreement with the Ad Pool whereby Anderson and Haines agreed to participate in and cooperate with the Ad Pool for the duration of the Franchise Agreement.

R. at 686. We agree that this finding is contradictory to the trial court's conclusion that the Ad Pool and AAMCO were not agents or otherwise connected. Further, we agree that AAMCO's requirement that franchisees participate in the advertising agreement allows it to circumvent the prohibitions of the Franchise Act. Nevertheless, we are unable to reach the issue of whether, in light of these circumstances, the Ad Pool should be subject to the Franchise Act.

█ Even assuming that the advertising agreement is subject to the provisions of the Franchise Act, Anderson and Haines are not entitled to relief. A franchisee who has signed a contract which violates the Franchise Act may bring an action to either recover damages or reform the franchise agreement. I.C. § 23–2–2.7–4. However, "no action may be brought for a violation of this chapter more than two (2) years after the violation." I.C. § 23–2–2.7–7. Here, Anderson and Haines signed the advertising agreement in April 1986 but did not raise the alleged violations until 1994, eight years la-

ter. Thus, Anderson and Haines' allegations are barred by the statute of limitations.[1]

█ Further, we note that Anderson and Haines received the benefit of eight years of television and print advertising under the advertising agreement. This court recently held that although the law generally declares that a contract made in contravention of statute is void, the court may consider other factors, including the relative benefit which the party seeking to avoid the bargain has enjoyed, when deciding whether to hold a contract void. *Norlund v. Faust*, 675 N.E.2d 1142, 1150–51 (Ind.Ct.App.1997). Thus, where a party receives the benefit of a contract for a period of time, he cannot later disavow its validity. *See Raymundo v. Hammond Clinic Assoc.*, 449 N.E.2d 276, 283 (Ind.1983) (party may not claim benefits under transaction or instrument and at same time repudiate its obligations). In light of the fact that Anderson and Haines dipped into the Ad Pool for over eight years without contesting the advertising agreement's validity, principles of equity dictate that they may not now swim away from their obligations under the agreement. The trial court correctly found in favor of the Ad Pool.[2]

### III. Advertising Agreement

In addition to their contention that the advertising agreement is void under the

---

1. Similarly, Anderson and Haines' contention that the advertising agreement violates the Franchise Act's prohibition against a franchisor "discriminating unfairly among its franchisees" is barred by the Act's two year statute of limitations and must fail. I.C. § 23–2–2.7–2.

2. The dissent contends that our determination that the Franchise Act was inapplicable as a defense for Anderson and Haines is incorrect because the statute of limitations, although it may bar claims, may not bar defenses. In support of this contention, the dissent cites *Robinson et al. v. Glass*, 94 Ind. 211, 216 (1883), which provides that "actions are barred but defences are not." However, the dissent fails to acknowledge the remainder of *Robinson*, which states:

A person who is sued upon a contract may show that it was procured by fraud, although more than six years elapsed before the action on the contract was instituted and the defence interposed. We speak now of pure defences,

an not as to matters which may be relied upon as forming a foundation for a counter-claim or cross complaint.

*Id.* Anderson and Haines' defense that the contract violates the Franchise Act is not a pure defense. Rather, the Franchise Act specifically limits its own application to actions to recover damages or reform the franchise agreement. I.C. § 23–2–2.7–4. It does not provide that it may be raised as a defense to actions seeking to enforce an agreement. Thus, the limitation on the use of the statute of limitations in *Robinson* is inapplicable.

Furthermore, we note that even assuming *Robinson* was applicable, our holding that Anderson and Haines could not raise the Franchise Act as a defense was not based solely on our determination that the statute of limitations had passed. Our holding was also based upon our finding that the agreement between them and the Ad Pool was not a franchise agreement and the fact that they enjoyed the benefits of the agreement for over eight years before contesting its validity.

Franchise Act, Anderson and Haines raise various other challenges to the agreement's validity. In particular, Anderson and Haines contend the agreement cannot be enforced for the following reasons: 1) it was not signed by all the parties; 2) it was induced by deceit and fraud; and 3) it was not fully performed.

## A. Signatures

First, Anderson and Haines argue that the trial court erred in finding that the advertising agreement was valid in the absence of all of the Ad Pool members' signatures. In situations where fewer than all the proposed parties execute a document, we look to the intent of the parties as determined by the language of the contract to determine who may be liable under the agreement. *Kruse Classic Auction, Co., Inc. v. Aetna Cas. & Sur. Co.*, 511 N.E.2d 326, 328 (Ind.Ct.App.1987), *trans. denied.* It should be assumed that all the parties who sign the agreement are bound by it unless it affirmatively appears that they did not intend to be bound unless others also signed. *Id.*

In the instant case, Anderson testified during trial regarding his intent when signing the advertising agreement. In particular, Anderson stated that "I would have wanted everybody that was participating to sign the agreement." R. at 1160. Contrary to this testimony, another Ad Pool member, Marc Brittner, testified that it was common practice for members of the Ad Pool to sign the agreement at the time they receive their franchise rather than altogether. R. at 924–25. After hearing this testimony, the trial court made the following findings:

> [I]t was the intent of all the Ad Pool members, including Anderson and Haines, when signing the Advertising Agreement, to become members of the Ad Pool and to become liable under the Advertising Agreement.
>
> It did not affirmatively appear that Anderson and Haines did not intend to be bound unless other members of the Ad Pool also signed their particular Advertising Agreement.

R. at 694. Anderson and Haines' argument that the evidence did not support the trial court's findings is merely an invitation to reweigh the evidence in their favor. We decline the invitation and hold that the trial court's findings were supported by the evidence presented.

## B. Fraud

Next, Anderson and Haines argue that the advertising agreement is invalid due to the Ad Pool's fraudulent conduct. In particular, Anderson and Haines contend that the Ad Pool misrepresented to them that advertising costs would be fairly assessed and that they would benefit equally under the advertising agreement. Anderson and Haines further argue that these representations induced them to enter the advertising agreement.

The elements of a claim of fraud include: 1) a material misrepresentation of a past or existing fact which, 2) was false, 3) was made with knowledge or in reckless ignorance of the falsity, 4) was relied upon by the complaining party, and 5) proximately caused the complaining party's injury. *Park 100 Investors, Inc. v. Kartes*, 650 N.E.2d 347, 349 (Ind.Ct.App.1995). Actual fraud may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed. *Biberstine v. New York Blower Co.*, 625 N.E.2d 1308, 1315 (Ind.Ct.App.1993).

Here, Anderson and Haines argue that they were misled by representations about their future benefits under the advertising agreement. These representations, even if false and misleading, cannot support an action for fraud in that they relate to future, as opposed to past or existing, facts. *See Strodtman v. Integrity Builders, Inc.*, 668 N.E.2d 279, 283 (Ind.Ct.App.1996) (representations regarding what defendant would do if plaintiff did not oppose development involved future conduct and could not support fraud action). Thus, the trial court correctly declined to void the contract on this ground.

### C. Full Performance

Anderson and Haines also argue that the trial court erred in enforcing the advertising agreement when the evidence showed that the Ad Pool did not fully perform its obligations under the contract. In particular, Anderson and Haines contend that the Ad Pool did not ensure that they benefitted equally from its advertising.

■■■ Initially, we note that contrary to Anderson and Haines' contentions, the Ad Pool was not required to fully perform the contract prior to bringing an action for breach of contract. *See City of Indianapolis v. Twin Lakes Enterprises, Inc.*, 568 N.E.2d 1073, 1080 (Ind.Ct.App.1991) (party who has partially performed his obligations under contract may treat contract as rescinded by other party and recover in quantum meruit as far as it has performed), *trans. denied.* Furthermore, the obligations which Anderson and Haines contend the Ad Pool failed to perform were not terms of the advertising agreement. No where in the agreement does the Ad Pool agree to ensure that every member receives an equal benefit from the advertising. Thus, the trial court did not err in finding that the Ad Pool had fulfilled its obligations and in enforcing the advertising agreement.

### IV. Conversion

Finally, Anderson and Haines contend that the trial court erred in finding against them on their counterclaim for conversion. Specifically, Anderson and Haines allege that the Ad Pool converted three of their checks by placing them in the Ad Pool's media assessments account rather than its Yellow Page assessments account, despite the fact that the checks indicated that they were to be for Yellow Page assessments.

■ The elements necessary to establish a civil cause of action for conversion are found in the criminal conversion statute. *DBC Capital Fund, Inc. v. Snodgrass*, 551 N.E.2d 475, 478 (Ind.Ct.App.1990). Under IND. CODE § 35–43–4–3, the criminal conversion statute, "[a] person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion...." *Id.* However, the plaintiff in a civil conversion action is only required to prove these elements by a preponderance of the evidence. *Id.*

■ Here, Tom Schroeder, the treasurer for the Ad Pool, testified that he received the checks from Anderson and Haines but did not recall whether the checks specifically indicated that they were to be for the Yellow Page account. R. at 1016. However, Schroeder stated that because Anderson and Haines were not delinquent in their Yellow Page assessment but were delinquent in their media assessment, he applied the checks to the media assessment account pursuant to the Ad Pool's established bookkeeping practices. R. at 1016–1018. As a result, the trial court found that "[t]he Ad Pool applied Yellow Pages funds to Andersons' and Haines' media account for sums due and owing on that account and there was no criminal intent on the part of the Ad Pool in its application of such funds to the media account." R. at 696. In light of Schroeder's testimony, we cannot say that the trial court's finding was clearly erroneous.

In sum, we find that the trial court did not err in determining that the Franchise Act was unavailable to Anderson and Raines as a defense to the breach of contract action due to the passing of the Franchise Act's statute of limitations. We further find that the trial court did not err in rejecting Anderson and Haines' arguments that the advertising agreement was unenforceable because it was not signed by all of the parties, was induced by fraud and was not fully performed. Finally, we hold that the trial court correctly found against Anderson and Haines on their counterclaim for conversion.

Judgment affirmed.

NAJAM, J., concurs.

CHEZEM, J., dissents with opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent for two reasons.

First, the Deceptive Franchise Practices Act's limitations for the bringing of an action does not automatically preclude the use of the Act for the raising of an affirmative

defense. "Actions are barred but defenses are not." *Burton v. Martin Oil Serv., Inc.*, 295 F.2d 679, 681 (7th Cir.1961) (quoting *Robinson v. Glass*, 94 Ind. 211, 216 (1883)).

Second, the majority concludes "we are unable to reach the issue of whether ... the Ad Pool should be subject to the Franchise Act." Slip op. at 836. Then, in the next paragraph, the majority opinion applies the provisions of the Act, improperly, against Anderson and Haines to deny them the affirmative defense of the alleged violations of the Act. It seems to me that if we can't determine whether the Act applies, we should not apply it.