David McKINNEY, et al., Appellants–Defendants,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49S02–9709–CV–483.

Supreme Court of Indiana.

March 26, 1998.

Gordon B. Dempsey, P.C., Indianapolis, for Appellants–Defendants.

Jeffrey A. Modisett, Attorney General, and Mary Ann Wehmueller, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## ON PETITION TO TRANSFER

BOEHM, Justice.

The Indiana Deceptive Consumer Sales Act (the "Act"), IND.CODE §§ 24–5–0.5–1 to – 10 (1993 & Supp.1997),[1] provides remedies to consumers and the attorney general for practices that the General Assembly deemed deceptive in consumer transactions. We granted transfer to consider the requirements of certain claims under the Act. We hold that intent on the part of the violator is required under the Act for "incurable" deceptive acts, but is not required for most other "deceptive acts." We further hold that the construction contracts in this case were not transactions in real property. As a result, the provision in the Act requiring an "incurable" deceptive act before the attorney general may sue a supplier of real estate does not apply in this case. However, we hold that Indiana Trial Rule 9(B)—which requires that fraud be pleaded with "particularity"—applies to actions under the Act that are "grounded in fraud." Because the State's complaint did not distinguish between its allegations of "incurable deceptive acts" (which require intent) and "deceptive acts" (which do not) the entire complaint was subject to Rule 9(B) but did not meet its requirements. Accordingly, McKinney's motion to dismiss or to make more specific should have been granted. We remand with directions to grant McKinney's motion to make more specific, but to grant the State leave to amend its complaint.

### Factual and Procedural History

In the early 1980's defendants David McKinney and Sonoma Group, Inc. (collec-tively "McKinney") began development of "Sonoma," a community of single family homes in Marion County. The State of Indiana filed suit against McKinney and other defendants in October 1985, alleging the Act was violated by McKinney's representations with respect to the construction of the homes. McKinney responded to the State's complaint with a Motion to Dismiss for Failure to State a Claim and a Motion for More Definite Statement. The motions alleged, among other things, that the State failed to allege an intent to mislead, and failed to plead with particularity as required by Indiana Trial Rule 9(B). The trial court denied McKinney's motions. Eight years later, in July 1994, the State filed a motion for summary judgment,[2] which the trial court granted. The court entered an injunction against making various representations and awarded a $15,000 judgment of restitution and $1250 for the costs of investigating and prosecuting the action pursuant to §§ 4(c)(2) and 4(c)(3) of the Act.[3]

On appeal, McKinney contended, inter alia, that the trial court erred in failing to grant his motions to dismiss and for a more definite statement, and compounded the error by granting the State's motion for summary judgment. McKinney contended that the consumer transactions at issue were transactions in real property, and that § 4(c) of the Act limited the State's authority with respect to real property to "incurable deceptive acts." Because the Act defines "incurable" deceptive acts as those done with "intent to defraud or mislead," McKinney contended that the trial court's grant of summary judgment was erroneous because the State had failed to prove intent. The Court of Appeals affirmed the trial court as to the pre-trial motions, but reversed the grant of summary judgment. Specifically, the Court of Appeals held that a "deceptive act," whether "incura-

---

1. The suit was filed in 1985. The Act has been amended a number of times over the years. Unless otherwise indicated, all references to the statute are to its current version. Where discrepancies in the various versions are material to this opinion, they are noted.

2. In the interim, all other defendants were dismissed from the lawsuit. The only defendants currently involved in this case are McKinney—an employee of Sonoma—and Sonoma Group, Inc.

3. The trial court cited § 4(c) in awarding costs to the State. Although the State requested costs in its complaint, at the time the suit was filed, § 4 did not include the present provisions for costs in § 4(c).

ble" or not, is one undertaken with the intent to mislead. *McKinney v. State,* 683 N.E.2d 1362 (Ind.Ct.App.1997) (unpublished table decision). In other words, in the view of the Court of Appeals, intent is an element of every claim under the Act. The court concluded that not only had the State failed to establish intent, but also questions of fact precluded summary judgment. The State sought transfer, contending that intent to deceive is not an element in every action under the Act. We granted transfer to consider this issue.

## I. Intent to Defraud or Mislead under the Act

■ We agree with the State that the language and structure of the Act do not require intent as an element of every deceptive act. The stated purpose of the Act is to "protect consumers from suppliers who commit deceptive and unconscionable sales acts" and to "encourage the development of fair consumer sales practices." §§ 1(b)(2) & 1(b)(3). The Act gives consumers and the attorney general the power to sue suppliers who engage in "deceptive acts." *See* § 4. In very general terms,[4] the structure of the Act is that if a good or service turns out to be other than as represented, the consumer may invoke the Act by giving notice of the problem to the supplier. The supplier then has thirty days to offer to fix it. If a cure is accomplished in a reasonable time that is the end of the matter. However, if either the defect is intentional, or the supplier does not supply goods or services conforming to the representations, the consumer has a claim under the Act and may recover attorneys fees among other remedies. In addition, even if no consumer sues, the State may sue under the Act for injunctive relief and, if the

acts are intentional, for civil penalties. §§ 4(c), 4(g), & 8.

■ The mechanics of this scheme are spelled out through several defined terms. Specifically, the Act provides for two kinds of actionable deceptive acts: "uncured" deceptive acts and "incurable" deceptive acts.[5] An uncured deceptive act means "a deceptive act ... with respect to which a consumer who has been damaged by such act has given notice to the supplier," but the supplier either fails to offer to cure within thirty days or does offer to cure but fails to cure within a reasonable time after the consumer accepts the offer. § 2(6). An incurable deceptive act "means a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." § 2(7). Intent to defraud or mislead is thus clearly an element of an incurable deceptive act. But just as clearly intent is not essential to every deceptive act. If it were, every deceptive act would be "incurable" because virtually any intentional misleading would qualify as a "scheme, artifice or device." This would plainly obliterate the statutory purpose to permit cure without resort to the courts for large numbers of acts that, if uncured, become the basis for a suit under the Act.

This conclusion is borne out by an analysis of the remaining provisions of the Act. Section 3(a) of the Act defines "deceptive act." As of 1985, of the twelve deceptive acts listed at that time, ten defined the required mental state as what the supplier "knows or should reasonably know," or similar language.[6] Accordingly, for example, a supplier commits a deceptive act under § 3(a)(1) if the supplier represents that a product in a consumer transaction has characteristics the supplier should reasonably know it does not have.

---

4. The Act contains a number of specific defined terms that control its meaning. This description is simply to give an overview to introduce the issues raised in this case. It is not a substitute for reading the Act carefully as it applies to any particular set of facts.

5. Either kind of deceptive act is actionable. However, an action for an uncured deceptive act is available only to the consumer. The attorney general "may bring an action to enjoin a deceptive act," whether or not the act is "uncured"— i.e., irrespective of whether there has been dam-

age, whether notice has been given to the supplier, or whether the supplier has satisfied all of a specified consumer complaint. *See* §§ 2(a)(6) & 4(c).

6. There are now sixteen deceptive acts listed in § 3(a). Section 10 was added in 1986 and also enlarged the list of deceptive acts. No mental state is required for any of the deceptive acts listed in § 10. That section simply says: "A supplier commits a deceptive act if the supplier gives any of the following representations ... or does any of the following acts...."

"Should reasonably know" is plainly a lesser standard than "knowingly violate" or "intend to mislead." Under the explicit language of the statute, however, it is sufficient to constitute a deceptive act under § 3(a)(1) and several other subsections of § 3(a).

This conclusion is further supported by the fact that the Act provides for two affirmative defenses, either of which would be superfluous if intent were an element of every "deceptive act." Section 3(c) provides that if a supplier can show "by a preponderance of the evidence that an act resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error," then the act is not deceptive. Section 3(d) provides a defense if the act was made in good faith without knowledge of its falsity in reliance upon certain representations made by others. For either defense to be meaningful, some acts must be "deceptive" and therefore actionable even if unintentional or unknowing. *Spaulding v. International Bakers Servs., Inc.*, 550 N.E.2d 307, 309 (Ind.1990) ("Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute.").

## II. Actions for Civil Penalties Require Knowing or Intentional Conduct

■ For all these reasons, we hold that the legislature did not make intent a requirement of every "deceptive act" under the Act. However, available remedies under the Act do turn on whether a deceptive act is knowingly or intentionally committed. Section 4(g) provides that each "knowing" violation of the Act is subject to a $500 civil penalty at the instance of the attorney general. Section 8, apparently largely redundantly, provides that civil penalties are recoverable by the attorney general for "incurable deceptive acts"—i.e., those perpetrated "with intent to defraud or mislead." In contrast, the basic remedy for a garden variety "uncured" deceptive act is, in substance, a consumer's claim for damages under § 4(a). This may be brought for most deceptive acts on a showing that the supplier knew or "should reasonably have known" of the violating cir-

cumstance. Under § 4(c) the attorney general can also attack many violations on a showing of this lesser mental state. However, civil penalties are not available to either a consumer or the attorney general for deceptive acts based solely on proof that a supplier "should reasonably have known" that the representations made were false.

## III. Consumer Transactions in Real Property

■ McKinney contends that the "subject of the consumer transaction" in this case is real property, and as a result intent is required, even if it is not an element of every claim under the Act. McKinney cites § 4(c) and contends that for consumer transactions in real property,[7] only the attorney general may bring an action under the Act and he may seek relief only for incurable deceptive acts. Although we agree with McKinney's construction of § 4(c), we conclude that the transaction in this case was not a transaction in real property. Accordingly, the State was not required to allege or prove intent.

Section 4(c) reads in part: "The attorney general may bring an action to enjoin a deceptive act. However, the attorney general may seek to enjoin patterns of incurable deceptive acts with respect to consumer transactions in real property." Taken literally, this section does not seem to prohibit the attorney general from enjoining deceptive acts involving consumer transactions in real property. On its face, it simply expressly permits the attorney general to enjoin incurable deceptive acts involving real property. As a matter of syntax, the first sentence is a blanket grant of authority that is not explicitly diminished by the second sentence. However, the second sentence has no meaning unless it is taken as a restriction on the attorney general's authority as to real estate transactions. This conclusion is supported by the Act's legislative history. Until 1982 the Act applied to consumer transactions in "goods" or "services." IND.CODE § 24–5–0.5–2(1) (1976). In 1982, this was changed to "personal property, real property, intangibles" or services. 1982 Ind. Acts, P.L. 152,

---

7. As noted *infra,* there are two statutory exceptions to the restriction on actions brought by

consumers that involve real property. Neither is at issue in this case.

§ 1. At the time the General Assembly subjected real estate to the Act, it also added the provisions giving unique treatment to real estate transactions. The following sentence was added to § 4(a), which established a cause of action for consumers who rely on a deceptive act: "This subsection does not apply to a consumer transaction in real property, except for purchases of time shares and camping club memberships." The same language was added to § 4(b), which authorizes class actions against suppliers. Section 4(c), which authorizes actions by the attorney general, was also changed. Before 1982 § 4(c) stated simply: "The attorney general ... may bring an action to enjoin a deceptive act." The General Assembly added the following sentence: "However, the attorney general may seek to enjoin patterns of incurable deceptive acts with respect to consumer transactions in real property." We can see no purpose to this additional sentence except to reflect the legislature's intent to limit the attorney general's authority under the Act as to the newly included category of real property. Accordingly, although the Amendment was inartfully drafted, we conclude that McKinney is correct that § 4(c) limits the authority of the attorney general in consumer transactions involving real property to seeking relief only for incurable deceptive acts.[8]

## IV. Construction Agreements are not Transactions in Real Property

■■ It follows from the foregoing analysis that if the transactions at issue are transactions in real property, in order to prevail the State must show that McKinney intended to defraud or mislead. The State, however, contends that the transactions it challenges are not transactions in real property, and therefore intent is not required. The State cites *J.E. Pierce v. Drees*, 607 N.E.2d 726 (Ind.Ct.App.1993) in support of the proposition that construction contracts are not "transactions in real estate" under the Act. In *Pierce*, a consumer entered into a construction contract whereby the contractor agreed to demolish the consumer's garage and build a new garage on the same site. The contractor also agreed to pour a concrete patio next to the consumer's home. The court held that the construction contract involved both the sale of goods and the performance of services and was not a transaction in real property for purposes of the Act.[9]

The State concedes that unlike the contract in *Pierce* and the authority *Pierce* cited, the consumers' transactions with McKinney included the purchase of real estate. According to the State, this is irrelevant because the alleged deceptive acts stemmed from misrepresentations regarding the provision of products and services. Specifically, the State alleges that for each consumer, McKinney agreed to build a home according to certain specifications of standard, quality, or grade. Further, the construction contracts contained a warranty that guaranteed all labor and materials against defects in workmanship for one year (excepting normal wear and tear). The State contends that the deceptive acts at issue relate to McKinney's failure to construct homes in accord with the terms of the construction agreements and to conform to express warranties in the construction of the homes. Like *Pierce*, the State concludes, the issues relate to the performance of construction agreements.

■ We agree that a construction contract is not a "transaction in real estate" as the term is used in the Act. We assume that the sale of an existing structure will normally be

---

8. This conclusion is bolstered by the different versions of this Bill that were considered by the Senate. The digest of the introduced version of Senate Bill Number 308—which ultimately became P.L. 152–1982—explained the intent of the Amendment to "add the disposition of real estate to the types of consumer transactions covered by the chapter...." The committee report on the third version of the Bill, Engrossed Senate Bill Number 308, required that the Bill be amended to include the limitation on private actions and attorney general actions with respect to real property. Accordingly, the language found in P.L. 152–1982 was added and, with some other changes, the bill became law.

9. For this conclusion, *Pierce* relied on *Captain & Co. v. Stenberg*, 505 N.E.2d 88 (Ind.Ct.App.1987). In that case, a consumer prevailed under the Act with respect to misrepresentations by the contractor in a construction contract to rebuild a fire damaged home. There was no discussion of whether or not the transaction was a transaction in real property.

a transaction in real property under the Act. In this case, however, the buyers selected a model home to be built on a plot of land which they also chose and purchased. Judging from the affidavits, there was a separate "Building Contract" that did not involve the sale of land.[10] The "Building Contract" was not for an existing structure and, for purposes of the Act, was therefore not exclusively a contract for real property. As far as can be determined from the record, each contract involved the assembly of a house and the provision of services to maintain the house. The contract explicitly says that "the Contractor agrees to construct for the Buyers a home." Unlike the sale of an existing structure, which a consumer is at liberty to inspect for defects, the promise to build a structure forces consumers to rely on a variety of representations that the builder is far more capable of evaluating. Section 1(a) of the Act provides: "This chapter shall be liberally construed and applied to promote its purposes and policies." Consistent with this directive, we hold that the construction contract at issue in this case was not a "transaction in real property" under the Act. Accordingly, the State may seek relief for both incurable and other deceptive acts of McKinney.

## V. Pleading with Particularity

▮▮▮ It remains to be decided whether the trial court correctly granted the State's motion for summary judgment. We do not reach this question, however, because we hold that the trial court erred in denying McKinney's motion to dismiss or to make more specific. On appeal, the Court of Appeals held that the State's use of the words "false, misleading, and deceptive" combined with the allegation of an unfulfilled promise was sufficient to state a claim and affirmed the trial court on this point. We disagree

and hold that for actions under the Act that are "grounded in fraud," the specificity requirement of Rule 9(B) must be met. We also hold that the elements of an action for civil penalties under the Act are such that it is grounded in fraud and therefore is subject to Rule 9(B). As explained in Part II, to the extent the State seeks civil penalties under § 4(c) or § 8, a "knowing" violation or an incurable deceptive act must be shown. These claims sufficiently "sound in fraud" to trigger Rule 9(B) if based on a discrepancy between what was told to the consumer and the underlying facts. However, Rule 9(B) does not apply to claims based on allegations that the supplier "should reasonably know" of the misrepresentations. Nor does it apply to injunctive relief the attorney general may obtain under § 4(c) except to the extent it relates to real estate transactions.

Indiana Trial Rule 9(B) is identical to Federal Rule 9(b). It provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be specifically averred. Malice, intent, knowledge, and other conditions of mind may be averred generally." In moving to dismiss under Rule 12(B)(6) and Rule 9(B), McKinney argued that the State did not aver facts showing the time, place, and content of the asserted misrepresentations—i.e., the "circumstances constituting fraud," *Dutton v. International Harvester Co.,* 504 N.E.2d 313, 318 (Ind.Ct. App.1987)—or allege that any of the misrepresentations were false at the time they were made. Instead, McKinney claimed, the State simply recited statutory language without the support of operative facts. The State responded that Rule 9(B) does not apply to deceptive acts under the Act. Rather, the State contended, Rule 9(B) applies to common law or actionable fraud but not to a statutory action where statutory remedies are sought.[11] Further, the State continued,

---

10. The record does not reveal how the Building Contract was related to the sale of land or even whether the same supplier sold the land and also agreed to build the house. We conclude that this is irrelevant. A supplier cannot bundle the sale of an automobile with a square inch of land in Alaska in order to avoid the Act. Similarly, the sale of real estate, even if by the same supplier, does not immunize a transaction that if done separately would not be realty.

11. Contrary to the State's contention that Rule 9(B) applies to common law but not to statutory actions, Indiana Trial Rule 1 provides that the trial rules "govern the procedure and practice in all courts of the state of Indiana in all suits of a civil nature whether cognizable as cases at law, in equity, or of statutory origin."

actionable fraud requires five elements—representation, falsity, scienter, reliance, and injury—whereas deceptive acts under the Act meet a lower threshold.

Application of Rule 9(B) to actions under the Act is a question of first impression. There are, however, useful analogs. For example, § 11 of the Securities Act of 1933 generally provides that any person acquiring a security issued under a registration statement that contained an untrue statement of a material fact can bring an action on the basis of the misrepresentation. 15 U.S.C. § 77k(a) (1994). Similarly, § 12(a)(2) of the 1933 Act generally provides that persons who offer or sell a security by means of a prospectus which includes an untrue statement of material fact are liable to the purchaser. 15 U.S.C. § 77l(a)(2) (1997). Scienter is not an element under either provision. Claims under sections 11 and 12, like actions under the Act, are based on misrepresentations of material fact and do not require proof of intentional deception on the part of the seller or offeror. Despite the absence of scienter as an element in these 1933 Act claims, however, Rule 9(b) of the Federal Rules of Civil Procedure has been held to apply, at least when the claim "sounds in fraud" or is "grounded in fraud." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404–05 (9th Cir.1996); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1222–23 (1st Cir.1996); *Melder v. Morris,* 27 F.3d 1097, 1100 n. 6 (5th Cir.1994) ("When 1933 Securities Act claims are grounded in fraud rather than negligence as they clearly are here, Rule 9(b) applies."); *accord Shapiro v. UJB Fin. Corp.,* 964 F.2d 272, 288 (3d Cir.1992); *Goldsmith v. Technology Solutions Co.,* 1994 WL 323317, at *5 (N.D.Ill. June 27, 1994) (if the nub of the allegations sound in fraud, then Rule 9(b) applies); *Todd v. Oppenheimer & Co.,* 78 F.R.D. 415, 419 n. 4 (S.D.N.Y.1978) (in action under § 12, Rule 9(b) applies when complaint sounds essentially in fraud); *but see In re NationsMart Corp. Sec. Litig.,* 130 F.3d 309, 315 (8th Cir.1997) (holding that Rule 9(b) does not apply to claims under § 11 because proof of

fraud or mistake is not a prerequisite to establishing liability).

The reasoning behind most of these decisions is that although fraud is not an element of the action, the action is nonetheless based on fraud. For example, a complaint under the 1933 Act need not prove fraud to prevail, but the allegations in the complaint often accuse the defendant of knowingly, wilfully, or intentionally misrepresenting information. This type of action is "grounded in fraud" and Rule 9(b) applies for the same reason it applies in typical "averments of fraud." [12] Federal Rule 9(b), like its Indiana counterpart, serves the objectives of deterring groundless suits and providing defendants with sufficient information in the complaint to enable them to prepare a defense. *See generally* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1296 (2d ed. 1990). Accordingly, in securities fraud cases, the plaintiff must plead the circumstances of fraud, what is false or misleading about a statement, and that the statement was false or misleading at the time it was made. *In re Stac,* 89 F.3d at 1404. But where the claim is based on negligence or innocent misrepresentations of fact, Rule 9(b) does not apply. *Id.* at 1405 n. 3; *Shaw,* 82 F.3d at 1222–23 (complaint which asserted that defendants possessed information they did not disclose did not aver fraud and Rule 9(b) did not apply); *Shapiro,* 964 F.2d at 288 (court does not decide whether Rule 9(b) applies to negligence violations). *Cf. Sears v. Likens,* 912 F.2d 889, 892–93 (7th Cir.1990) (holding that Rule 9(b) applies to § 12(2) without distinguishing between negligent or fraudulent based claims).

The State did not meet the requirements of Rule 9(B) in its complaint in this case. The complaint alleged that McKinney made representations described in the complaint and alleged in conclusory terms that they were "false and misleading and constitute deceptive acts and incurable deceptive acts." By alleging the acts to be incurable, the State alleged intent and asserted a basis for civil penalties. Accordingly, Rule 9(B)

---

12. Until 1995 Rule 9(b) applied to actions under § 10(b) of the 1934 Exchange Act. In 1995, Congress made the pleading requirements under § 10(b) stricter by passing the Private Securities Litigation Reform Act of 1995. 15 U.S.C. § 78u–4 (Supp.1995).

applied. Perhaps the State could have alleged as a separate claim a right to injunctive relief based on a lesser mental state, but it did not do so. Rather, the complaint did not distinguish between the allegations of "deceptive acts" and "incurable deceptive acts." As a result, the entire complaint must be judged by Rule 9(B) standards. *Cf. In re Stac,* 89 F.3d at 1405 n. 2 (complaint alleging §§ 11, 12, and 10(b) violations of the 1933 and 1934 Acts specifically disclaimed fraud with respect to § 11, but Rule 9(b) applied to all claims because the "gravamen of the complaint was plainly fraud and no effort was made to show any other basis").

▇▇▇▇ Under the standards of Rule 9(B), at least major portions of the complaint are deficient. Affidavits attached to and incorporated in the complaint supply some of the required information, but not all. Treating the complaint and affidavits as one document, they do not state with specificity what the representations were, who made them,[13] or when or where they were made. Most importantly, in most cases they do not plead what the statements were that were false, and in what respect they were false. In many instances they amount to an assertion that McKinney made promises—sometimes in the form of warranties and guarantees—and then failed to perform.[14] Although these allegations may support a breach of contract claim, without more flesh these bare bones do not state claims under the Act. A broken promise is not ipso facto a false representation. *Cf. Anderson v. Indianapolis Ind. Aamco Dealers Adver. Pool,* 678 N.E.2d 832, 837 (Ind.Ct.App.1997) (actual fraud may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed), *trans. denied.* A promise can be made without knowledge or reason to believe that it will be broken, but a statement that is false for purposes of the Act must be false when made. The State's complaint also contains some allegations that suggest misrepresentations of then currently existing state of affairs, but these are quite general.[15] Even unfulfilled promises can also support allegations of misrepresentation or misdescription of the product if the facts at the time support the conclusion that fulfillment of the promise was problematic. *Cf. R.R.S. II Enterprises, Inc. v. Regency Assocs.,* 646 N.E.2d 56, 59 (Ind.Ct.App.1995) (representation that shopping mall would have double lane traffic access was misrepresentation of existing fact, where it was known at time that double lane was impossible and a construction plan for single lane had been approved). These allegations may very well be expandable to assert claims under the statute, but are not pleaded with sufficient particularity to be evaluated, and do not pass Trial Rule 9(B) muster.

### Conclusion

Because the State does not challenge transactions in real estate, the State is not required to allege or prove intent to mislead or knowing violations except insofar as it relies on a mental state higher than "reasonably should have known." However, the State's complaint in this case alleged incurable acts (that require intent) and sought civil penalties (that require a "knowing violation" or proof of incurable acts) but failed to meet the requirements of Indiana Trial Rule 9(B). Accordingly, we remand to the trial court to grant McKinney's motion to make more specific with leave to the State to amend. Because we determine the applicability of Rule 9(B) for the first time to claims under the Act, leave to amend to conform the pleading requirements should be liberally granted. Because the motion to dismiss or to make more specific should have been granted, the trial court erred in granting the State's motion for summary judgment and that judgment is vacated. With respect to McKinney's other contentions—that the trial court erred in dismissing McKinney's counterclaim

13. The complaint specifically named six defendants and named "John Doe and Mary Roe" as unknown defendants.

14. Examples are that tennis courts and privacy fences would be installed.

15. For example, the State alleges that goods and services did not have the "sponsorship" represented to the consumers, without explaining what this means or what its practical effect might be.

and defenses—we summarily affirm the Court of Appeals. Ind. Appellate Rule 11(B)(3).

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

SULLIVAN, J., concurs in Parts I through IV of the opinion but dissents from Part V, believing the allegations were pled with sufficient particularity to meet the requirements of Indiana Trial Rule 9(B).