## KAHLO JEEP CHRYSLER DODGE OF KNIGHTSTOWN, INC., et al., Appellants–Plaintiffs,

v.

## DAIMLERCHRYSLER MOTORS COMPANY, LLC, Appellee–Defendant.

No. 49A02–0412–CV–1086.

Court of Appeals of Indiana.

Oct. 12, 2005.

Ronald C. Smith, Peter S. Kovacs, Mary F. Schmid, David I. Rubin, Stewart & Irwin, P.C., Indianapolis, IN, for Appellants.

John Joseph Tanner, Ryan M. Hurley, Baker & Daniels, LLP, Indianapolis, IN, for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Kahlo Jeep Chrysler Dodge of Knightstown, Inc., Kahlo Jeep, Inc., Palmer Dodge West, Inc., Palmer Dodge, Inc., Tom O'Brien Northside, Inc., Gene Beltz Shadeland Dodge, Inc., Westgate Chrysler Jeep Dodge, Inc., Eastgate Chrysler Jeep, Inc., Danville Chrysler Dodge Jeep, Inc., Tom O'Brien Co., Dellen & Dellen, LLC, and Paul Goeke, Inc., (collectively "the Dealers") appeal the trial court's grant of summary judgment in favor of DaimlerChrysler Motors Company, LLC ("DaimlerChrysler"). We affirm.

### Issue

The sole restated issue is whether the Dealers' cause of action against DaimlerChrysler alleging a violation of the Indiana Deceptive Franchise Practice Act ("the Act") was barred by the Act's statute of limitations.

### Facts

Between 1980 and 2001, the Dealers executed franchise agreements with DaimlerChrysler or its predecessor, Chrysler Corporation, to sell Chrysler, Jeep, and/or Dodge vehicles. All of the agreements stated in part, with insignificant variations in one of them, "[DaimlerChrysler] will have the right to amend this Agreement to the extent that [DaimlerChrysler] deems advisable, provided that [DaimlerChrysler] makes the same amendment in [DaimlerChrysler] Sales and Service Agreements generally." App. p. 26. In May 2004,

DaimlerChrysler gave notice to the Dealers, and in fact to Chrysler dealers throughout the United States, of an amendment to the franchise agreements concerning dealer sales performance requirements.

The Dealers, not pleased with the amendment, filed suit against DaimlerChrysler in June 2004. The complaint, which sought class status for all Chrysler dealers in Indiana, contended that the May 2004 amendment represented a substantial change to the franchise agreements, and that it was illegal under the Act for the franchise agreements to have permitted Chrysler to amend the agreements unilaterally. DaimlerChrysler moved for summary judgment, arguing that the Dealers' suit was barred by the Act's two-year statute of limitations for actions based on purported violations of the Act because all of the franchise agreements had been executed more than two years before the suit was filed. On November 30, 2004, the trial court granted summary judgment in favor of DaimlerChrysler. The Dealers now appeal.

## Analysis

Summary judgment is appropriate only if the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Beta Steel v. Rust*, 830 N.E.2d 62, 67 (Ind.Ct.App.2005). We must construe all facts and reasonable inferences drawn from those facts in favor of the nonmoving party. *Beta Steel*, 830 N.E.2d at 67. "The review of a summary judgment motion is limited to those materials designated to the trial court and we must carefully review decisions on summary judgment motions to ensure that parties are not improperly denied their day in court." *Id.* "All trial court rulings should be presumed to be correct, but in the context of summary judgment proceed-

ings we will not hesitate to reverse a trial court's ruling if it has misconstrued or misapplied the law, failed to consider material factual disputes, or improperly considered immaterial factual disputes." *Id.* at 68.

The issue here solely concerns proper statutory interpretation and construction and does not involve any disputed facts. Thus, the case presents a pure question of law for which disposition by summary judgment is appropriate. *Medical Assurance of Indiana v. McCarty*, 808 N.E.2d 737, 741 (Ind.Ct.App.2004). If a statute is unambiguous, we may not interpret it but must give the statute its clear and plain meaning. *Id.* If a statute is ambiguous, we must ascertain the legislature's intent and interpret the statute to effectuate that intent. *Id.* A statute may be ambiguous if it is susceptible to more than one reasonable and intelligible interpretation. *Id.* If interpretation is necessary, the express language of the statute controls and we apply the rules of statutory construction. *Id.* "We are required to determine, give effect to, and implement the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience." *Id.*

Section 1 of the Act, labeled "Franchise agreement; unlawful provisions," provides in part:

It is unlawful for any franchise agreement entered into between any franchisor and a franchisee who is either a resident of Indiana or a nonresident who will be operating a franchise in Indiana to contain any of the following provisions:

\*      \*      \*      \*      \*      \*

(3) Allowing substantial modification of the franchise agreement by the franchi-

sor without the consent in writing of the franchisee.

Ind.Code § 23–2–2.7–1. Indiana Code Section 9–23–3–7 specifically applies to new motor vehicle manufacturer-dealer franchise agreements and provides, "It is an unfair practice for a manufacturer or distributor to violate IC 23–2–2.7." Indiana Code Section 9–23–6–9 further provides, "A dealer who is injured by an unfair practice set forth in IC 9–23–3 may sue for relief in a court of competent jurisdiction . . . ." Thus, new motor vehicle dealers fully enjoy the protections of the Act, as well as certain other provisions that apply only to them.

Indiana Code Section 23–2–2.7–4 also provides, "Any franchisee who is a party to a franchise agreement . . . which contains any provision set forth in Section 1 of this chapter or who is injured by an unfair act or practice set forth in Section 2 of this chapter may bring an action to recover damages, or reform the franchise agreement." Finally, Indiana Code Section 23–2–2.7–7 provides, "No action may be brought for a violation of this chapter more than two (2) years after the violation." The Dealers have framed the issue in this case as follows:

> The sole issue to be determined in this appeal is when does a cause of action accrue under I.C. § 23–2–2.7–1(3), triggering the two (2) year statute of limitations contained in I.C. § 23–2–2.7–7. Does the statute of limitations begin to run when the franchise agreement is executed, or when a substantial unilateral modification of the franchise agreement is actually attempted?

Appellant's Br. p. 9. DaimlerChrysler does not substantively disagree with this framing of the issue.

We conclude that the statutes at issue here are unambiguous. The essence of the Dealers' argument is that although DaimlerChrysler's standard franchise agreement reserved it the right to unilaterally amend the agreement at anytime, it was impossible to determine whether the modification provision permitted "substantial" modification until such time as DaimlerChrysler actually attempted a "substantial" modification. The Act only prohibits franchise contract provisions that allow the franchisor to make "substantial" unilateral modifications. *See* I.C. § 23–2–2.7–1(3). Thus, the Dealers contend, its cause of action against DaimlerChrysler did not accrue until such time as it actually attempted a "substantial," as opposed to "insubstantial," modification of the franchise agreement.[1]

We disagree. The franchise agreement, on its face, permitted DaimlerChrysler to make any modification to the agreement that it determined was necessary, provided it did so uniformly to all franchises. It does not in any way limit the modifications DaimlerChrysler could make to only "insubstantial" modifications. The fact remains here that DaimlerChrysler's stock franchise agreement allowed it to alter the agreement's terms, without limitation and without first obtaining the written consent of the Dealers. Such power necessarily would include the ability to make either substantial or insubstantial changes to the agreement.[2] Indiana Code Section 23–2–

---

**1.** It appears from the record that DaimlerChrysler has in the past modified the standard franchise agreement on several occasions without complaint by the Dealers.

**2.** We need not address a scenario in which a franchise agreement might allow for modification but is unclear as to the extent of permissible modification. The modification clause of DaimlerChrysler's franchise agreement is clear and unambiguous, and the Dealers could have sued under Indiana Code Section 23–2–2.7–4 to reform the agreement so that the modification clause would only allow

2.7–1(3) expressly prohibits contractual provisions "allowing" for substantial modification, not merely attempts at such a modification.

The Dealers also argue, however, that Section 23–2–2.7–1(3) should be read not only as prohibiting contractual provisions allowing substantial, unilateral modifications of franchise agreements by the franchisor without the written consent of the franchisee, but also as prohibiting any actual attempts at such modification, irrespective of what the franchise agreement provides or expressly allows. Under this theory, the relevant event for triggering the two-year statute of limitations is when an attempt at substantial modification is made, not when the contract was originally executed. The Dealers rely primarily upon *Continental Basketball Association v. Ellenstein Enterprises, Inc.*, 669 N.E.2d 134 (Ind.1996), in support of their argument

In *Ellenstein*, a franchisee claimed that the franchisor had terminated the franchise agreement unilaterally, and without good cause or in bad faith. Our supreme court first held that the Deceptive Franchise Practices Act applied to the contract. *Id.* at 136–37. It then noted that the Act "prohibits any provision in franchise agreements that provides for unilateral termination of a franchise without good cause or in bad faith ... or that permits a franchisor to fail to renew a franchise without good cause or in bad faith...." *Id.* at 139 (citing I.C. §§ 23–2–2.7–1(7) and (8)). Citing Section 23–2–2.7–4, the court then stated, "the Practices Act expressly provides for a cause of action against the franchisor in cases where the agreement contains a provision prohibited by the Practices Act, *and/or where the franchise*

*agreement is terminated without good cause or not renewed without good cause." Id.* (emphasis added). The Dealers focus on the emphasized portion of this last sentence and extrapolate that the inclusion in a franchise contract of any prohibited provision listed in Section 23–2–2.7–1 not only is a violation in its own right, but that there is a separate violation of the Act if a franchisor engages in any conduct that parallels one of the prohibited provisions. They correctly note that Section 23–2–2.7–2 lists several types of *conduct* by franchisors that is expressly prohibited, as opposed to prohibited contract provisions. Termination or nonrenewal without good cause is not separately listed as prohibited conduct, but only a prohibited contract provision; the same is true of substantial modifications to franchise agreements.

*Ellenstein* is not dispositive of the question before us. It did not mention or address the question of when a cause of action accrues for purposes of the Act's statute of limitations. It is also unclear from the opinion whether the franchise contract at issue allowed for termination or nonrenewal without cause or in bad faith, or whether the franchisor allegedly attempted such termination or nonrenewal in the absence of any such contract provision. Here, there was a clear contract provision allowing substantial unilateral modification that the Dealers failed to challenge for more than two years after executing the DaimlerChrysler franchise agreements. Finally, *Ellenstein* noted that neither the trial court nor this court had addressed the question of the franchisee's termination claim in any detail because it and we had concluded, improperly, that the entire franchise agreement was void for an unrelated reason. Therefore, our supreme

unilateral modification if such change was "insubstantial." Then, if DaimlerChrysler attempted a unilateral and purportedly "substantial" modification, the Dealers might have had a cause of action for breach of the reformed franchise agreement.

court also declined to address the issue in detail, noting that the parties had not briefed it. *See Ellenstein,* 669 N.E.2d at 139. *Ellenstein* is of little value in deciding the issue presented here.[3]

We do not doubt that the Act was passed with the intention of providing franchisees with greater protection from franchisor abuse than otherwise would be available under existing common law governing contract formation. Under the common law, for instance, it is "[f]undamental contract law that original contracts may provide for modification. A contractual provision so changed is as voluntary and consensual as the original contract." *Kuehl v. Terre Haute First Nat'l Bank,* 436 N.E.2d 1160, 1162 (Ind.Ct.App.1982). The Act generally prohibits such provisions that would benefit a franchisor, but it also states that any violation of the Act must be challenged in court within two years of the violation, if it is to be challenged at all.

We keep in mind that "[w]hen the legislature enacts a statute in derogation of the common law, this Court presumes that the legislature is aware of the common law, and does not intend to make any change therein beyond what it declares either in express terms or by unmistakable implication." *Bartrom v. Adjustment Bureau, Inc.,* 618 N.E.2d 1, 10 (Ind.1993). Section 23–2–2.7–1(3) is in derogation of common law, which permits contracts to contain modification provisions. The two-year statute of limitations in the Act appears to represent a clear policy choice by the legislature that although it intended to abrogate the common law of contracts in certain ways for the benefit of franchisees, it also placed the burden on franchisees to challenge any facially improper franchise contract provision within two years of the contract's formation. As with most legislation, this appears to represent a balancing of competing interests. The interests here are those of franchisees to be treated fairly by large corporations and of franchisors to rely on the validity of their contracts when they have gone unchallenged for a long period of time.

We also disagree with the Dealers that it would be absurd not to allow franchisees to sue a franchisor for substantially modifying a contract pursuant to a clear provision allowing such modifications that has been in effect for more than two years. One of the key purposes of statutes of limitation is to encourage the prompt presentation of claims. *Olcott Int'l & Co., Inc. v. Micro Data Base Sys., Inc.,* 793 N.E.2d 1063, 1074 (Ind.Ct.App.2003), *trans. denied.* As noted, without the Act there would be nothing illegal in a contract provision such as existed here. The legislature could reasonably require franchisees to exercise promptly their right to challenge such a provision or else the ordinary common law upholding the validity of such provisions would apply.[4] Additionally, if

---

**3.** The Dealers' reliance on *Wright–Moore Corp. v. Ricoh Corp.,* 908 F.2d 128 (7th Cir. 1990), is also misplaced. There, the Seventh Circuit held that whether a modification to a franchise agreement is "substantial" under the Act is a mixed question of fact and law. *Id.* at 140. Like *Ellenstein,* the opinion does not mention or address the statute of limitations question that is squarely presented in this case.

**4.** The Dealers argue that it is unfair to expect franchisees to sue a franchisor within two years of executing a franchise agreement containing an illegal provision because of fear of retaliation or of damaging the business relationship. This fear might not be entirely groundless, but we do observe that Indiana Code Section 23–2–2.7–2(5) prohibits franchisors from "[d]iscriminating unfairly among its franchisees or unreasonably failing or refusing to comply with any terms of a franchise agreement." This would seem to prohibit the type of retaliatory action feared by the Dealers and would provide a cause of action un-

no modification provision existed in a franchise contract, any actual unilateral attempt to modify the contract without the franchisee's consent would be invalid in any event and, thus, could be challenged by the franchisee under common law principles. *See Stelko Elec., Inc. v. Taylor Cmty. Sch. Bldg. Corp.*, 826 N.E.2d 152, 159 (Ind.Ct.App.2005).

We have not been directed to any other state that has a statute flatly prohibiting a franchise agreement from containing a provision that allows unilateral modification by the franchisor. In fact, such provisions seem to be generally acceptable. The editors of American Jurisprudence specifically advise: "A franchisor may wish to change the contracts with its franchisees in order to keep up with the competition.... [I]t is important that the franchise agreement be drafted in such a manner as to make it clear that future system changes may be required." 62B Am.Jur.2d 294, *Private Franchise Contracts* § 345 (1990). Indiana Code Section 23–2–2.7–1(3) specifically prohibiting such provisions is not only in derogation of Indiana common law, but also apparently conflicts with general practice regarding franchise agreements. As such, we conclude it would be inappropriate to extend the protection offered by that statute any further than the legislature clearly intended or expressed.

What the statute prohibits is "any franchise agreement entered into between any franchisor and a franchisee" from containing a unilateral modification provision; doing so thus constitutes a violation of the Act. I.C. § 23–2–2.7–1. The Act, however, also says that any violation of the Act must

be challenged within two years of the violation. Here, the violations of the Act occurred when the franchise agreements were executed or "entered into between" DaimlerChrysler and the Dealers. The Dealers' current lawsuit is premised upon DaimlerChrysler exercising its clear contractual right to modify the franchise agreement. In order to succeed on their claim they must establish that the unilateral modification provision itself is unlawful; otherwise, DaimlerChrysler properly modified the agreements under a contract provision that is not invalid under standard contract law. The Dealers are precluded from making such a challenge under the plain language of the Act because all of the franchise agreements were "entered into between" DaimlerChrysler and the Dealers more than two years before the Dealers filed this lawsuit.[5]

Other states have different schemes for protecting franchisees from franchisors who wish to modify a franchise agreement. In Texas, for example, a motor vehicle manufacturer-franchisor is prohibited from modifying a franchise agreement, "[n]otwithstanding the terms of any franchise," unless the manufacturer gives written notice to the dealer-franchisee and the Texas Motor Vehicle Board approves of the modification if the dealer objects to the proposed modification. Tex. Occ.Code § 2301.454. Thus, in Texas there is not a statute like Indiana's absolutely barring contractual provisions that give a franchisor free reign in modifying a franchise agreement, but there is an administrative limitation on actual attempts at modification. *See also, e.g.*, Ariz.Rev.Stat. § 28–

---

der Section 23–2–2.7–4 if such action occurred in response to a franchisee exercising its rights under the Act.

**5.** Our discussion here applies only to questions involving franchise agreements and the

application of the Act. This case would have no application in a different scenario concerning a contract not governed by the Act and a claim that such a contract contained a void or illegal provision.

4363; 815 Ill. Comp. Stat. 710/4; 63 Pa. Cons.Stat. § 818.12.

Similarly, we note Indiana Code Section 9–23–3–23(1)(B), which prohibits manufacturers from requiring any new automobile dealer to "make any substantial alterations to the use of franchises ... if to do so would be unreasonable or would not be justified by current economic conditions or reasonable business considerations." A dealer-franchisee may file suit for an alleged violation of this statute pursuant to Indiana Code Section 9–23–6–9. A cause of action for a violation of this statute would seem to accrue whenever a manufacturer-franchisor attempted to make an "unreasonable" alteration to a franchise agreement, but the Dealers have not sought relief under this statute. Instead, they seem to contend that it is irrelevant here whether DaimlerChrysler's amendment was "unreasonable" or "justified by current economic conditions or reasonable business considerations," and that any unilateral and substantial amendment of their franchise agreements is impermissible.

It would seem, however, that Section 9–23–3–23(1)(B) would be superfluous and unnecessary if a franchisee could always and at any time challenge any unilateral and substantial modification of a franchise agreement under Section 23–2–2.7–1(3) without having to show unreasonableness. In other words, Section 23–2–2.7–1(3), combined with Section 23–2–2.7–7, gives franchisees a two-year window to challenge *any* franchise agreement provision that on its face allows a franchisor to make a unilateral and substantial change to the agreement. If that two-year window has passed without complaint by the franchisee, then if it is a new motor vehicle dealer it still may challenge an actual unilateral attempt to modify the agreement, without regard to the two-year statute of limitations or whether the franchise agreement purported to allow the franchisor to make any unilateral modification. To succeed on such a claim, however, the modification must be found by a court to be unreasonable.

We also conclude that the Act's statute of limitations is an "occurrence-based" statute, much like the medical malpractice statute of limitations. *See Martin v. Richey*, 711 N.E.2d 1273, 1278 (Ind.1999). The medical malpractice statute begins to run when the act of malpractice occurs, not when the patient suffers actual injury as a result of the malpractice. *See id.* at 1278 n. 6. Similarly, the Act provides that the statute of limitations begins to run with any "violation" of the Act, not when a franchisee has actually suffered injury due to a franchisor's actions. *See* I.C. § 23–2–2.7–7. Here, there was a violation of the Act when DaimlerChrysler entered into franchise agreements with the Dealers that contained a provision that the Act labeled an "unlawful provision." The Dealers had two years from the violation date to bring suit against DaimlerChrysler to reform the agreements, but none of them did so. They cannot avoid the statute of limitation's running by asserting that DaimlerChrysler committed a separate wrong by invoking an unambiguous and otherwise legal contract provision in which they had acquiesced for several years without complaint. Our holding today is consistent with the sparse case law that has addressed this issue. *See Monroe County Oil Co., Inc. v. Amoco Oil Co.*, 75 B.R. 158, 162 (S.D.Ind.1987); *see also Anderson v. Indianapolis Indiana AAMCO Dealers Adver. Pool*, 678 N.E.2d 832, 836 (Ind.Ct.App.1997), *trans. denied* (holding franchisee was barred by the Act's statute of limitations from claiming provision in franchise agreement regarding advertising violated Indiana Code Section 23–2–2.7–1(11) where franchisee did not

raise that claim until eight years after executing the franchise agreement).

The General Assembly clearly could have worded the Act very differently, to provide that unilateral and substantial modification of a franchise agreement by a franchisor is an independent "unlawful act or practice" under Section 2 of the Act. It did not, instead only choosing to label it an impermissible franchise agreement provision under Section 1 of the Act. We must give effect to the intent of the legislature as evidenced by the plain language it has chosen to use in the Act. That intent clearly appears to be that causes of action for violations of Section 1 of the Act accrue when a contract containing an unlawful provision is executed and franchisees have two years from that date to challenge the provision, while a cause of action for violations of Section 2 of the Act accrues when the franchisor engages in the prohibited conduct. To accept the Dealers' position here would be to ignore the distinction between Section 1 and Section 2 of the Act that the legislature clearly made.

### Conclusion

The Dealers' action against Daimler-Chrysler is barred by the Act's statute of limitations. The trial court properly entered summary judgment in favor of DaimlerChrysler.

Affirmed.

CRONE, J., and NAJAM, J., concur.