[Cite as *State v. Brown*, 2013-Ohio-2220.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| MARQUS LEON BROWN AKA | : | Case No. 2012CA00040 |
| MARCUS LEON BROWN | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of
Common Pleas, Case No.
2011CR1538



JUDGMENT:                     AFFIRMED



DATE OF JUDGMENT ENTRY:       May 28, 2013



APPEARANCES:

For Defendant-Appellant:                For Plaintiff-Appellee:

ANTHONY T. KAPLANIS                      JOHN D. FERRERO, JR.
701 Courtyard Center                     STARK CO. PROSECUTOR
116 Cleveland Ave. NW                     RENEE M. WATSON
Canton, OH 44702                         110 Central Plaza South, Ste. 510
                                         Canton, OH 44702-1413

*Delaney, J.*

{¶1}   Appellant Marqus Leon Brown, a.k.a. Marcus Leon Brown, appeals from the judgment entry of conviction and sentence entered in the Stark County Court of Common Pleas on January 25, 2012.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   This case arose on July 10, 2011, around 3:00 a.m. when S.H. awoke to find a strange man in her bedroom who subsequently raped her.  S.H. was able to scream for help, attracting a neighbor's attention to call 911 and eventually calling 911 herself.

{¶3}   S.H., a 60-year-old woman at the time of these events, lived in a ground-floor apartment at London Square, a large apartment complex near the intersection of Whipple Avenue and Hills and Dales Road in Jackson Township, Stark County, Ohio.  S.H.'s bedroom contained sliding glass doors which opened onto a partially-fenced patio area.  For the previous six months, S.H.'s adult son A. had been living with her, but in early July A. began to move his things out of the apartment.

{¶4}   S.H. was friendly with an upstairs neighbor, Kay Foster, whose apartment was one floor up and over from hers.

{¶5}   The evening of July 9, 2011 began with S.H. and a friend going to a casino.  Shortly after midnight, S.H. returned home, stopping at an ATM and at the Scheetz gas station near her apartment.  To reach her apartment's parking spot from Scheetz, S.H. crossed the parking lot of the Acme Click supermarket adjacent to her apartment complex.

{¶6} S.H. entered her apartment and locked her front door, although she testified she did not put the "safe lock" on the top of the door because she wasn't sure if A. would be coming back that night. S.H. turned on the air conditioning because it was a muggy evening and took several medications, including sleeping pills. She laid down in her bedroom and fell asleep.

{¶7} S.H. was awakened around 3:00 a.m. by a strange feeling in her bed, as though the covers were being twisted. She sat up and was able to make out a man standing to the left of her bed. Assuming it was her son, A., she told him to take the air mattress into the living room. When the person did not move or respond, she realized it was not A. and was instead an intruder. S.H. began to scream and the man grabbed her and threw her down when she tried to get to her bedroom door. She tried to hit him, but testified that he was very strong and her efforts to fight him were easily deflected.

{¶8} The intruder proceeded to rape S.H. digitally, orally, and with his penis. S.H. continued screaming throughout. The intruder repeatedly said he had a gun and would kill her. S.H. later testified that his voice was very calm and he kept telling her to "shush."

{¶9} It was very dark in the room and S.H. did not have her contacts in, preventing her from getting a good look at the rapist. At one point she saw his hand against her own skin, and observed him to be dark-complexioned; she thought he was African-American. She also saw that he was wearing a dark baseball-style cap "with some white on it" and a round bill, which she knocked off during the struggle. Her fingers grazed his head and she described his hair as "not Caucasian," coarse and

tightly curled. She had the impression he was tall and not young, closer to her sons' age (40).

{¶10} S.H. was never face-to-face with her attacker and did not notice any odor from him, such as alcohol or cigarettes.

{¶11} Eventually S.H. believed she briefly blacked out and awoke to find the man down beside her bed with a small flashlight, as though he was looking for something. S.H. believed he was about to kill her and covered her head with the blankets. It became quiet in the room and S.H. realized the intruder was gone, having left through the sliding glass doors.

{¶12} S.H. immediately called 911 and her son, A. Her neighbor, Kay Foster, had heard her screams and had also called 911. Jackson Township Police were soon on the scene and S.H. was transported to Aultman Hospital for a forensic rape exam.

{¶13} Police searched the area in and around S.H.'s apartment for evidence. An officer described S.H.'s rear patio area as very clean and well-kept, partially surrounded by a privacy fence. Along this fence he spotted a beer bottle which he photographed and collected. He believed the bottle to be fresh because it still contained liquid which had bubbles in it.

{¶14} The rape kit and beer bottle were submitted to the Stark County Crime Lab for DNA testing.

{¶15} S.H.'s son A. gave police their first lead. His mother had called him immediately after the assault, hysterical, stating that she had been raped. Later that night, she described the attacker as a fit, muscular, younger African-American male. A. was aware of someone fitting that description whom he had seen around the

apartment complex, coming and going from the Acme Click supermarket. A. did not know the man's name or where he lived, but had seen him in an Acme Click uniform and hat, working in the store near the apartments. A. told police about the individual.

{¶16} Det. Henderhan followed up on A's information and provided A's description to an Acme Click manager, who named appellant. Henderhan observed appellant working at Acme Click as a meat cutter, wearing a uniform which included a black baseball-style cap with white lettering. Appellant is age 35, 6'2 and weighs 230 pounds. He also lived in the London Square apartments, 388 feet from S.H.'s apartment. Henderhan made contact with appellant and his girlfriend on July 10 around 6:00 p.m. She didn't observe any scratches or injuries on appellant, and noticed his head was clean-shaven. He also had a small mustache. Appellant said he was in bed asleep with his girlfriend at 3:00 a.m. the night before. Henderhan obtained a search warrant for appellant's DNA and submitted it to the Stark County Crime Lab.

{¶17} Appellant's DNA matched the DNA found on the beer bottle and on swabs in the rape kit. Appellant is a "possible low-level contributor" to the mixture of DNA profiles obtained from S.H.'s fingernail swabs; is a "possible source" of DNA from the anal/perianal swabs; and is a "major source" of DNA from the mouth area of the beer bottle. Regarding the anal/perianal swabs the chance of selecting an unrelated individual at random with the same partial DNA profile is 1 in 5.882 billion.

{¶18} At trial appellant presented evidence that he worked at Acme Click from 6:00 a.m. until 2:30 p.m. on July 9 and from 9:30 a.m. until 6:00 p.m. on July 10. His supervisor testified that he has always known appellant to have a shaved head and

small mustache. Appellant's girlfriend testified that he was with her in their apartment, asleep, when the rape of S.H. occurred.

{¶19} Appellant was charged by indictment with one count of rape pursuant to R.C. 2907.02(A)(2), one count of aggravated burglary pursuant to R.C. 2911.11(A)(1), and one count of kidnapping pursuant to R.C. 2905.01(A)(4). In addition, Count III, kidnapping, was accompanied by a sexual motivation specification pursuant to R.C. 2941.147. Appellant entered pleas of not guilty and the case proceeded to trial by jury. Appellant moved for judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence; the motions were denied. Appellant was found guilty as charged and sentenced to an aggregate prison term of 20 years. He was also determined to be a Tier III sexual offender.

{¶20} Appellant now appeals from the judgment entry of his convictions and sentence.

## ASSIGNMENTS OF ERROR

{¶21} Appellant raises three Assignments of Error:

{¶22} "I. THE TRIAL COURT'S FINDING OF GUILTY OF RAPE, KIDNAPING (*sic*) AND AGGRAVATED BURGLARY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

{¶23} "II. THE TRIAL COURT ERRED IN NOT ORDERING A MISTRIAL FOLLOWING IMPROPER CLOSING ARGUMENT BY PROSECUTION."

{¶24} "III. THE TRIAL COURT GAVE AN ERRONEOUS JURY INSTRUCTION THEREBY DENYING APPELLANT A FAIR TRIAL."

**ANALYSIS**

I.

{¶25} In his first assignment of error, appellant claims his convictions are against the manifest weight and sufficiency of the evidence. We disagree.

{¶26} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶27} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of

the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶28} Appellant was convicted of one count of rape pursuant to R.C. 2907.02(A)(2), which states, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." He was also convicted of one count of aggravated burglary pursuant to R.C. 2911.11(A)(1), which states, "No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the * * * any criminal offense, if any of the following apply: [t]he offender inflicts, or attempts or threatens to inflict physical harm on another." Finally, appellant was convicted of one count of kidnapping pursuant to R.C. 2905.01(A)(4), which states, "No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:  [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will." Appellant challenges the element of his identification as the rapist who assaulted S.H. in her home on July 10, 2010.

{¶29} First, appellant takes issue with the quality of S.H.'s description of her attacker and the thoroughness of the police investigation. It is well-established, however, that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216.

{¶30} The deficiencies in appellee's evidence pointed to by appellant do not overcome the substantial credible evidence in support of his conviction. The DNA evidence developed from the mouth of the beer bottle definitively placed appellant at the scene; the chance of selecting an unrelated individual at random with the same profile would be 1 in 204.7 quadrillion. The anal/perianal swab from the rape kit tested positive for the presence of semen, and the DNA profile from the semen was also linked definitively to appellant, even though statistically the terminology indicates appellant is a "possible contributor." Despite the qualified statistical terminology, the evidence of appellant's guilt is substantial.

{¶31} Stepping back from the DNA evidence, it is impossible for us to overlook the strong circumstantial evidence that appellant matched the description S.H. provided, with the exception of the hair she thought she felt. Appellant lived and worked in the same "neighborhood" as the victim, matched the physical description she gave, and wore a uniform cap similar to the one she described.

{¶32} We find appellant's convictions for rape, aggravated burglary, and kidnapping are supported by sufficient evidence and are not against the manifest weight of the evidence. Appellant's first assignment of error is overruled.

II.

{¶33} In his second assignment of error, appellant argues the trial court should have ordered a mistrial when the prosecutor misstated the law of alibi during closing argument. We disagree.

{¶34} The test for prosecutorial misconduct is whether the prosecutor's remarks and comments were improper and if so, whether those remarks and

comments prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990), cert. denied, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596 (1990). In reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

{¶35} Complaints of prosecutorial misconduct are often raised in the context of the closing argument, but the question of "how far is too far" is to be judged by the circumstances of the particular case:

> * * * *.

> The prosecutor's conduct should always be judged within the context of the whole case, and most particularly, the whole argument.

> We turn now to the consequences of overstepping by the prosecutor. The trial of the case is under the control of the trial judge, who must monitor the proceedings as they develop, and control the conduct of both counsel. Because the trial judge is present and sees and hears all that goes on, great deference should be accorded to his judgment as to how to handle these issues.

> When misconduct occurs, the trial judge should admonish the prosecutor, and if the conduct is severe enough, admonish him within the presence of the jury. He should

instruct the jury to disregard the prosecutor's statements only if requested by defense counsel. *State v. Harcourt*, 46 Ohio App.3d 52, 546 N.E.2d 214 (1988). If appellant moves for a mistrial, the court should overrule the motion only if satisfied that the conduct will not result in a miscarriage of justice, considering the curative steps taken by the court. * * * *.

When reviewed by the appellate court, we should examine the climate and conduct of the entire trial, and reverse the trial court's decision as to whether to grant a mistrial only for a gross abuse of discretion. See *State v. Maurer*, 15 Ohio At.3d 239, 473 N.E.2d 768 (1984), cert.denied, 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728 (1985).

*State v. Draughn*, 76 Ohio App.3d 664, 671, 602 N.E.2d 790 (5th Dist.1992).

{¶36} In the instant case, during rebuttal argument the prosecutor stated: "* * * Now, they have brought into play what [appellant] was doing and where he was. Now he has something to prove. He has said I have an alibi, I wasn't there. He needs to prove it. He needs to prove it beyond a reasonable doubt and he brought in—" Defense trial counsel immediately objected, the trial court sustained the objection, and gave a limiting instruction per counsel's request. The trial court instructed the jury that the prosecutor's statement was not a correct statement of the law and instructed the

panel to disregard the statement. In final jury instructions, the trial court again properly instructed the jury on alibi.

{¶37} Upon reviewing the prosecutor's remark in the context of the entire trial, we do not find it prejudicially affected the substantial rights of appellant. The jury is presumed to follow the instructions of the trial court. *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990), paragraph four of the syllabus. Appellant has not pointed to any evidence in the record that the jury failed to do so in this case. The comment was an isolated incident in an otherwise proper argument, in a presentation of overwhelming evidence against appellant, as discussed supra.

{¶38} Appellant cannot establish that but for the prosecutor's incorrect statement of the law, the outcome of his trial would have been different. Appellant's second assignment of error is overruled.

III.

{¶39} In his third assignment of error, appellant argues he was denied a fair trial because the trial court gave an erroneous jury instruction regarding hypothetical questions to experts. We disagree.

{¶40} Upon instructing the jury at the end of the trial, the trial court stated: Questions have been asked in which an expert witness was permitted to assume that certain facts were true and to give an opinion based upon that assumption. You must decide whether the assumed facts on which the expert based his or her opinion are true. If any assumed fact is not established by the greater weight of the evidence, you will decide the effect of that failure on the value of the opinion of the expert.

{¶41} Appellant argues this instruction may have confused the jury about the burden of proof. We note, however, appellant did not object to this instruction at trial, and we therefore review this instruction for plain error. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn*, 5th Dist. No. 2008-CA-00137, 2009-Ohio-1688, citing *State v. Morales*, 10 Dist. Nos. 03-AP-318, 03-AP-319, 2004-Ohio-3391, at ¶ 19 (citation omitted). The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Barnes*, supra, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶42} As appellee points out, appellant has not argued, much less established, plain error; he points to no portion of the record which misleads the jury as to the burden of proof for each charged offense. The instruction does appear to be superfluous in that the record is devoid of any hypothetical question posed to appellee's experts. Moreover, appellant has not established that the outcome of the trial would have been different absent the instruction.

{¶43} Appellant's third assignment of error is overruled.

## CONCLUSION

{¶44} For the foregoing reasons, appellant's three assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.

Gwin, P.J. and

Farmer, J. concur.


PAD:kgb