[Cite as *State v. Brown*, 2014-Ohio-2988.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2014CA00005 |
| | : | |
| MARQUS BROWN | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:         Appeal from the Stark County Court of
                                 Common Pleas, Case No. 2011 CR
                                 1538

JUDGMENT:                        AFFIRMED

DATE OF JUDGMENT ENTRY:          June 30, 2014

APPEARANCES:

For Plaintiff-Appellee:                  For Defendant-Appellant:

JOHN D. FERRERO                          MARQUS L. BROWN, PRO SE
STARK COUNTY PROSECUTOR                  Inmate No. 621-993
                                         Trumbull Correctional Institution
RENEE M. WATSON                          P.O. Box 901
110 Central Plaza South, Suite 510       Leavittsburg, OH 44430
Canton, OH 44702-1413

*Delaney, J.*

{¶1} Defendant-Appellant Marqus Brown appeals the December 26, 2013 judgment entry of the Stark County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} We recite the underlying facts of this case as originally stated in *State v. Brown*, 5th Dist. Stark No. 2012CA00040, 2013-Ohio-2220.

{¶3} This case arose on July 10, 2011, around 3:00 a.m. when S.H. awoke to find a strange man in her bedroom who subsequently raped her. S.H. was able to scream for help, attracting a neighbor's attention to call 911 and eventually calling 911 herself.

{¶4} S.H., a 60–year–old woman at the time of these events, lived in a ground-floor apartment at London Square, a large apartment complex near the intersection of Whipple Avenue and Hills and Dales Road in Jackson Township, Stark County, Ohio. S.H.'s bedroom contained sliding glass doors, which opened onto a partially-fenced patio area. For the previous six months, S.H.'s adult son A. had been living with her, but in early July A. began to move his things out of the apartment.

{¶5} S.H. was friendly with an upstairs neighbor, Kay Foster, whose apartment was one floor up and over from hers.

{¶6} The evening of July 9, 2011 began with S.H. and a friend going to a casino. Shortly after midnight, S.H. returned home, stopping at an ATM and at the Scheetz gas station near her apartment. To reach her apartment's parking spot from

Scheetz, S.H. crossed the parking lot of the Acme Click supermarket adjacent to her apartment complex.

{¶7} S.H. entered her apartment and locked her front door, although she testified she did not put the "safe lock" on the top of the door because she wasn't sure if A. would be coming back that night. S.H. turned on the air conditioning because it was a muggy evening and took several medications, including sleeping pills. She laid down in her bedroom and fell asleep.

{¶8} S.H. was awakened around 3:00 a.m. by a strange feeling in her bed, as though the covers were being twisted. She sat up and was able to make out a man standing to the left of her bed. Assuming it was her son, A., she told him to take the air mattress into the living room. When the person did not move or respond, she realized it was not A. and was instead an intruder. S.H. began to scream and the man grabbed her and threw her down when she tried to get to her bedroom door. She tried to hit him, but testified that he was very strong and her efforts to fight him were easily deflected.

{¶9} The intruder proceeded to rape S.H. digitally, orally, and with his penis. S.H. continued screaming throughout. The intruder repeatedly said he had a gun and would kill her. S.H. later testified that his voice was very calm and he kept telling her to "shush."

{¶10} It was very dark in the room and S.H. did not have her contacts in, preventing her from getting a good look at the rapist. At one point she saw his hand against her own skin, and observed him to be dark-complexioned; she thought he was African–American. She also saw that he was wearing a dark baseball-style cap "with some white on it" and a round bill, which she knocked off during the struggle. Her

fingers grazed his head and she described his hair as "not Caucasian," coarse and tightly curled. She had the impression he was tall and not young, closer to her sons' age (40).

{¶11} S.H. was never face-to-face with her attacker and did not notice any odor from him, such as alcohol or cigarettes.

{¶12} Eventually S.H. believed she briefly blacked out and awoke to find the man down beside her bed with a small flashlight, as though he was looking for something. S.H. believed he was about to kill her and covered her head with the blankets. It became quiet in the room and S.H. realized the intruder was gone, having left through the sliding glass doors.

{¶13} S.H. immediately called 911 and her son, A. Her neighbor, Kay Foster, had heard her screams and had also called 911. Jackson Township Police were soon on the scene and S.H. was transported to Aultman Hospital for a forensic rape exam.

{¶14} Police searched the area in and around S.H.'s apartment for evidence. An officer described S.H.'s rear patio area as very clean and well-kept, partially surrounded by a privacy fence. Along this fence he spotted a beer bottle which he photographed and collected. He believed the bottle to be fresh because it still contained liquid which had bubbles in it.

{¶15} The rape kit and beer bottle were submitted to the Stark County Crime Lab for DNA testing.

{¶16} S.H.'s son A. gave police their first lead. His mother had called him immediately after the assault, hysterical, stating that she had been raped. Later that night, she described the attacker as a fit, muscular, younger African–American male. A.

was aware of someone fitting that description whom he had seen around the apartment complex, coming and going from the Acme Click supermarket. A. did not know the man's name or where he lived, but had seen him in an Acme Click uniform and hat, working in the store near the apartments. A. told police about the individual.

{¶17} Det. Henderhan followed up on A's information and provided A's description to an Acme Click manager, who named appellant. Henderhan observed appellant working at Acme Click as a meat cutter, wearing a uniform which included a black baseball-style cap with white lettering. Appellant is age 35, 6′2 and weighs 230 pounds. He also lived in the London Square apartments, 388 feet from S.H.'s apartment. Henderhan made contact with appellant and his girlfriend on July 10 around 6:00 p.m. She didn't observe any scratches or injuries on appellant, and noticed his head was clean-shaven. He also had a small mustache. Appellant said he was in bed asleep with his girlfriend at 3:00 a.m. the night before. Henderhan obtained a search warrant for appellant's DNA and submitted it to the Stark County Crime Lab.

{¶18} Appellant's DNA matched the DNA found on the beer bottle and on swabs in the rape kit. Appellant is a "possible low-level contributor" to the mixture of DNA profiles obtained from S.H.'s fingernail swabs; is a "possible source" of DNA from the anal/perianal swabs; and is a "major source" of DNA from the mouth area of the beer bottle. Regarding the anal/perianal swabs the chance of selecting an unrelated individual at random with the same partial DNA profile is 1 in 5.882 billion.

{¶19} At trial appellant presented evidence that he worked at Acme Click from 6:00 a.m. until 2:30 p.m. on July 9 and from 9:30 a.m. until 6:00 p.m. on July 10. His supervisor testified that he has always known appellant to have a shaved head and

small mustache. Appellant's girlfriend testified that he was with her in their apartment, asleep, when the rape of S.H. occurred.

{¶20} Appellant was charged by indictment with one count of rape pursuant to R.C. 2907.02(A)(2), one count of aggravated burglary pursuant to R.C. 2911.11(A)(1), and one count of kidnapping pursuant to R.C. 2905.01(A)(4). In addition, Count III, kidnapping, was accompanied by a sexual motivation specification pursuant to R.C. 2941.147. Appellant entered pleas of not guilty and the case proceeded to trial by jury. Appellant moved for judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence; the motions were denied. Appellant was found guilty as charged. At the January 25, 2012 sentencing hearing, the trial court determined the rape and kidnapping were allied offenses of similar import. The trial court sentenced appellant to a prison term of 10 years for aggravated burglary and 10 years for rape, to be served consecutively. Appellant was also determined to be a Tier III sexual offender.

{¶21} Appellant appealed his conviction and sentence to this court in *State v. Brown*, 5th Dist. Stark No. 2012CA00040, 2013-Ohio-2220. He argued his conviction was against the manifest weight and sufficiency of the evidence. He also alleged prosecutorial misconduct. We affirmed appellant's conviction and sentence. The Ohio Supreme Court declined jurisdiction of appellant's appeal on October 23, 2013. *See State v. Brown*, 136 Ohio St.3d 1512, 2013-Ohio-4657, 995 N.E.2d 1214 and 137 Ohio St.3d 1462, 2013-Ohio-4657.

{¶22} On August 16, 2013, appellant filed an application to re-open his appeal pursuant to App.R. 26(B). We denied his application by judgment entry on November 5, 2013.

{¶23} On December 20, 2013, appellant filed a pro se Motion to Vacate or Set Aside Judgment Conviction or Sentence. He argued in his motion that the trial erred in failing to sentence him pursuant to House Bill 86 and the consecutive sentencing guidelines. He also argued his trial counsel was ineffective due to counsel's failure to object to the sentencing error. The trial court denied the motion without a hearing on December 26, 2013.

{¶24} It is from this decision appellant now appeals.

### ASSIGNMENTS OF ERROR

{¶25} Appellant raises three Assignments of Error:

{¶26} "I. TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED DEFENDANT'S DUE PROCESS WHEN DEFENDANT WAS NOT SENTENCED ACCORDING TO HOUSE BILL 86 BUT, INSTEAD WAS SENTENCED UNDER THE OLD LAW AFTER WHOSE SENTENCING ENTRY WAS FILED AFTER LEGISLATION'S SEPTEMBER 30, 2011 EFFECTIVE DATE OF HOUSE BILL 86 WHICH RESULTED IN PLAIN ERROR.

{¶27} "II. TRIAL DEFENSE COUNSEL PROVIDED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO DEFENDANT'S SENTENCING UNDER THE OLD LAW WHICH SET FORTH PLAIN ERROR.

{¶28} "III. DEFENDANT'S SENTENCE WAS CONTRARY TO LAW DUE TO MULTIPLE ERRORS AT SENTENCING RESULTING IN A DEPRIVATION OF DUE PROCESS."

## ANALYSIS

*I., II., and III.*

{¶29} The State argues appellant's December 20, 2013 Motion to Vacate or Set Aside Judgment Conviction or Sentence was a petition for post conviction relief. We agree.

{¶30} We outlined the characteristics of a petition for post conviction relief in *State v. Hicks*, 5th Dist. Muskingum No. CT2012-0017, 2012-Ohio-3985, ¶ 22:

"A petition for post conviction relief is a means to reach constitutional issues that would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction." *State v. Perry,* 5th Dist. No.2010CA00185, 2011–Ohio–274, ¶ 12, citing *State v. Murphy,* 10th Dist. No. 00AP–233, 2000 WL 1877526 (Dec. 26, 2000). "Although designed to address claimed constitutional violations, the post-conviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment." *Id.,* citing *State v. Calhoun,* 86 Ohio St.3d 279, 281, 1999–Ohio–102, 714 N.E.2d 905; *State v. Steffen,* 70 Ohio St.3d 399, 410, 693 N.E.2d 67 (1994). "A petition for post-conviction relief, thus, does not provide a petitioner a second opportunity to litigate his or her conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition."

*Id.,* citing *State v. Jackson,* 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980); *State v. Lewis,* 5th Dist. No.2007CA00358, 2008–Ohio3113 at ¶ 8. A court need not issue findings of fact and conclusions of law when it dismisses an untimely petition or successive petitions for post conviction relief. *State ex rel. Kimbrough v. Greene,* 98 Ohio St.3d 116, 2002–Ohio–7042, 781 N.E.2d 155; *State ex rel. Fuller v. Sutula,* 86 Ohio St.3d 301, 714 N.E.2d 924 (1999).

<u>Timeliness</u>

{¶31} Appellant filed a direct appeal of his judgment of conviction. R.C. 2953.21(A)(2) states, "[e]xcept as otherwise provided in section 2953.23 of the Revised Code, a petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication * * *."

{¶32} The trial transcript was filed with the Fifth District Court of Appeals on June 6, 2012. Pursuant to R.C. 2953.21(A)(2), the expiration of time for appellant to file his petition for post conviction relief was December 3, 2012. Appellant filed his petition for post conviction relief on December 20, 2013, which was 565 days after the date the trial transcript was filed with the court of appeals

{¶33} However, pursuant to R.C. 2953.23(A), the court may consider an untimely petition for post conviction relief:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that

section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

(2) The petitioner was convicted of a felony, the petitioner is an offender for whom DNA testing was performed under sections 2953.71 to 2953.81 of the Revised Code or under former section

2953.82 of the Revised Code and analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case as described in division (D) of section 2953.74 of the Revised Code, and the results of the DNA testing establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death.

{¶34} Appellant was convicted of a felony and DNA testing was relevant in his conviction. Appellant, however, makes no allegation in his petition for post conviction relief pursuant to R.C. 2953.23(A)(2) that results of DNA testing establish, by clear and convincing evidence, actual innocence of that felony offense.

{¶35} Appellant also makes no argument in his petition for post conviction relief or in his appeal of the denial of the petition as to the delay in filing or how the petition otherwise complies with R.C. 2953.23(A)(1).

{¶36} We find no error for the trial court to deny appellant's petition for post conviction relief based on appellant's failure to comply with R.C. 2953.21(A)(2) and 2953.23. The trial court was without jurisdiction to consider appellant's petition for post conviction relief.

<u>Res Judicata</u>

{¶37} Appellant argues in his first and second Assignment of Errors that the trial court failed to sentence him in compliance with House Bill 86 and his trial counsel was

ineffective for failing to object to the same. Appellant argues in his third Assignment of Error that his convictions for aggravated burglary and rape were allied offenses and should have merged for sentencing purposes. Appellant did not raise any of these arguments on direct appeal.

{¶38} Even if appellant's delayed post-conviction petition was timely, his claims are barred by res judicata because his arguments could have been raised in his direct appeal. "Under the doctrine of res judicata, a final judgment of conviction bars the defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that the defendant raised or could have raised at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *State v. Callahan*, 7th Dist. Mahoning No. 12 MA 173, 2013-Ohio-5864, ¶ 9 quoting *State v. Perry,* 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967). Conversely, issues properly raised in a post-conviction petition are those that could not have been raised on direct appeal because the evidence supporting the issue is outside the record. *State v. Milanovich,* 42 Ohio St.2d 46, 50, 325 N.E.2d 540 (1975).

{¶39} Appellant's arguments do not raise any issues that are dependent on evidence outside the record and could have been raised and argued on direct appeal.

{¶40} Finally, appellant has not provided this Court with a transcript of the sentencing hearing. In *Knapp v. Edwards Laboratories,* 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980), the Supreme Court of Ohio held the following: "[t]he duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. *See State v. Skaggs*, 53 Ohio St.2d 162, 372 N.E.2d 1355 (1978). Without a transcript

of the proceedings, appellant cannot demonstrate any error or irregularity in connection with the trial court's decision. *Knapp, supra.*

{¶41} Appellant's three Assignments of Error are overruled.

## CONCLUSION

{¶42} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Wise, P.J. and

Baldwin, J., concur.